No. 59,598

FORUM INSURANCE COMPANY, a corporation, *Appellant*, v. SEITZ AVIATION, INC., a corporation, *et al.*, *Appellees.*

(737 P.2d 29)

Opinion filed May 1, 1987.

*Larry Kaplan,* of Conklin & Adler, Ltd., of Chicago, Illinois, argued the cause, and *James F. Murphy* and *Robert J. Verrando,* of the same firm, and *William L. Oliver,* of Martin, Pringle, Oliver, Wallace & Swartz, of Wichita, were on the briefs for appellant.

*John L. Carmichael,* of Turner & Boisseau, Chartered, of Wichita, argued the cause and was on the brief for appellees Seitz Aviation, Inc., Charles Seitz, and C & J Enterprises.

*John E. Cowles,* of Fleeson, Gooing, Coulson & Kitch, of Wichita, argued the cause, and *Donald R. Newkirk,* of the same firm, was with him on the brief for appellees Ranson & Company, J & J Partnership, and Jack Ranson.

*James A. Walker,* of Triplett, Woolf & Garretson, of Wichita, argued the cause and was on the brief for appellee Stephen E. Shogren.

*Michael R. Meacham,* of Wichita, argued the cause and was on the brief for appellee Estate of George Van Riper.

*Dennis L. Gillen,* of Depew Gillen & Rathbun, of Wichita, argued the cause, and *James T. McIntyre,* of the same firm, was with him on the briefs for appellee Nancy Kreutzer.

*Brad T. Murphree,* of Blair & Murphree, P.A., of Wichita, was on the brief for *amicus curiae,* Connie C. Bell.

The opinion of the court was delivered by

McFARLAND, J.: This is a declaratory judgment action brought

by Forum Insurance Company seeking a determination of its liability under an aviation insurance policy. The liability question arose when an airplane insured by plaintiff crashed near Wichita on November 12, 1985. Four people were killed in the crash, including the pilot. One passenger, Stephen Shogren, survived. The eleven defendants include the personal representatives of three of the deceased persons, the surviving passenger, and various firms named as insureds in the policy and individuals connected therewith. The district court entered judgment on the pleadings in favor of the defendants and the insurance company appeals therefrom.

The aviation policy was issued to Seitz Aviation, Inc., which is owned by Charles Seitz. Declarations amendments show the following to be additional insureds: J & J Partnership, c/o Jack Ranson; Ranson and Company, Inc.; United Securities, Inc.; and C & J Enterprises. Decedent Joseph Kreutzer is alleged to have been a partner in the J & J Partnership and a director and vice-president of United Securities, Inc. At the time of the crash, decedent George Van Riper is alleged to have been an officer and director of Ranson and Company, Inc.; Stephen Shogren is alleged to have been a director and president of United Securities, Inc.; and the deceased pilot, James D. Gass, is alleged to have been an employee of Seitz Aviation, Inc. Decedent Donald Bell was an attorney.

The insurance company brought this action seeking a determination that exclusion (j) of the policy relieved it from liability on, or any duty to defend against, any claims arising from the deaths of Kreutzer, Van Riper, and Gass or any claim for injuries sustained in the crash by Stephen Shogren. The exclusion provides:

"*The following exclusions apply to all sections of the policy*:
The Policy does not apply—
. . . .

(j)   *to any claim or suit by one Insured, its agents, servants or employees against any other Insured, its agents, servants or employees.*" (Emphasis supplied.)

The insurance company contends that inasmuch as Kreutzer, Van Riper, Gass, and Shogren were each employees of insureds, exclusion (j) relieves it of any liability to pay any judgments rendered against the insureds on such claims or to defend its

insureds on such claims. Any claim arising from the death of attorney Bell is not alleged to be subject to the exclusion.

The district court did not determine on the merits whether exclusion (j) of the policy excluded coverage herein. Rather, the district court determined that all exclusions in the base policy had, themselves, been excluded by virtue of an endorsement to the policy. The endorsement provided in pertinent part:

"AIR TAXI OPERATOR POLICIES OF INSURANCE FOR AIRCRAFT BODILY INJURY AND PROPERTY DAMAGE LIABILITY

"The policy to which this endorsement is attached is hereby amended to assure compliance by the Named Insured, *an air taxi operator, providing services in air transportation,* with the provisions of Part 298 of the Economic Regulations of the former Civil Aeronautics Board, now the Office of Aviation Operation of the Department of Transportation.

"1. In consideration of the premium stated in the policy to which this endorsement is attached, the Insurer hereby agrees to pay, within the limits of liability for coverages specified in the policy, all sums which the *Named Insured shall become legally obligated to pay as damages for bodily injury to or death of persons or for loss of or damage to property of others, resulting from the Named Insured's negligent operation, maintenance, or use of aircraft in 'air transportation,' as that term is defined in the Federal Aviation Act of 1958.* The liability of the Insurer is not contingent upon the solvency or freedom from bankruptcy of the Named Insured.

"2. The Insurer also agrees that, unless replaced in accordance with the former Civil Aeronautics Board Economic Regulations paragraph 298.45(b), the policy to which this endorsement is attached shall not be cancelled or withdrawn or modified to reduce the limits of liability by the Insurer until after 10 days' written notice by the Insurer to the Office of Aviation Operation of the Department of Transportation at its offices in Washington, DC, which 10 day notice period shall commence to run from the date such notice is actually received at the Office of Aviation Operation of the Department of Transportation. In addition, the Insurer agrees to notify the Office of Aviation Operation of the Department of Transportation 10 days before the expiration date of the attached policy of insurance, unless the policy has been renewed. Further, the Insurer agrees to notify the Office of Aviation Operation of the Department of Transportation within 5 days after receipt of notice of cancellation of the policy by the Insured of this action by the Insured.

"3. The Insured further agrees that within the limits of liability for coverages specified in the policy, no term, condition, limitation, stipulation, or other provision contained in the policy or any endorsement attached thereto or any violation thereof by the Named Insured, except EXCLUSIONS contained in this endorsement, shall relieve the Insurer of liability with respect to such bodily injury or property damage. In this connection, the Insurer expressly agrees that no violation by the *Named Insured* of any safety or economic rule, regulation, order, or other legally imposed requirement of the Federal

Aviation Administration or the Office of Aviation Operation of the Department of Transportation, and no special waiver issued by the Federal Aviation Administration or the Office of Aviation Operation of the Department of Transportation shall affect the insurance afforded under this policy.

"4. The Insurer further agrees that while an aircraft owned by the Named Insured and declared in this policy is withdrawn from normal use because of its breakdown, repair, servicing, loss, or destruction, such insurance as is afforded by this policy with respect to such aircraft applies also with respect to another aircraft of similar type, horsepower, and seating capacity not so owned while temporarily used as the substitute for such aircraft.

"5. *The EXCLUSIONS of the policy to which this endorsement is attached are deleted and are replaced by the following exclusions*:

"EXCLUSIONS. Unless otherwise provided in the policy of insurance, the liability insurance afforded under this policy shall not apply to:

"a. Any loss against which the Named Insured has other valid and collectible insurance, except that the limits of liability provided under this policy shall be excess of the limits provided by such other valid and collectible insurance up to the limits certified in a certificate of insurance, but in no event exceeding the limits of liability expressed elsewhere in this policy;

"b. (Reserved)

"c. Liability assumed by the Named Insured under any contract or agreement, unless such liability would have attached to the Insured even in the absence of such contract or agreement;

"d. *Bodily injury, sickness, disease, mental anguish, or death of any employee of the Named Insured while engaged in the duties of his employment, or any obligation for which the Named Insured or any company as his Insurer may be held liable under any Workman's Compensation or Occupational Disease Law*;

"e. Loss of or damage to property owned, rented, occupied, or used by, or in the care, custody, or control of the Named Insured or carried in or on any aircraft with respect to which the insurance afforded by this policy applies;

"f. Personal injuries, or death, or damage to, or destruction of property caused directly or indirectly by hostile or warlike action, including action in hindering, combating, or defending against an actual, impending, or expected attack by any government or sovereign power, de jure or de facto, or military, or naval, or air forces, or by an agent of such government, power, authority, or forces; the discharge, explosion, or use of any weapon of war employing atomic fission or atomic fusion, or radioactive materials; insurrection, rebellion, revolution, civil war, or usurped power, including any action in hindering, combating, or defending against such an occurrence; or confiscation by any government or public authority;

"g. Any loss arising from operations within any geographic areas other than the following:

1' Between any point in the "area of operation" described in the Operations Specifications issued by the FAA in conjunction with its issuance of the ATCO Operating Certificate to the air taxi operator named hereon. Provided, however, that if one or more of the 48 contiguous states is listed in such area of operation, all 48 contiguous states will be included within the coverage of insurance under this endorsement; and

2' Within any other geographic area for which coverage is specified in the policy of insurance;

And provided further, that a loss caused by mere misadventure in flying over or landing in any geographic area not specified in 1' or 2' above shall not be excluded.

"h. Any loss arising from operations by the Named Insured to or from installations of the Distant Early Warning System (DEW line) or the Ballistic Missile Early Warning System (BMEWS);

"i. Any loss arising from operation of an aircraft 1' without a copilot, if one is required under the attached policy of insurance or 2' by a pilot (or pilot and copilot) not named in or meeting the qualification, experience, and currency requirements provided in the attached policy of insurance;

"j. Any loss arising from the ownership, maintenance, or use of any aircraft not declared to the Insurer in accordance with the terms and conditions of this policy other than substitute aircraft as authorized in paragraph 4 hereof;

"k. *Any loss arising from operations other than the carriage by aircraft of persons or property as a common carrier for compensation or hire or the carriage of mail by aircraft in interstate, overseas, or foreign air transportation;*

"l. *Any loss arising from operations with aircraft for which an airworthiness certificate has not been issued, has been surrendered, or has been suspended, or revoked by the Administrator of the Federal Aviation Administration, or has expired by its terms;*

"m. Any loss arising from operations with aircraft which, at takeoff, have not had inspections, maintenance, preventive maintenance, and alterations performed when required by the Federal Aviation Regulations or which have not had such inspections,     maintenance, preventive maintenance, and alterations performed by persons authorized by the Federal Aviation Regulations." (Emphasis supplied.)

The district court leapt upon paragraph 5 of the endorsement, repeated for convenience as follows:

"5. *The EXCLUSIONS of the policy to which this endorsement is attached are deleted and are replaced by the following exclusions . . . .*"

The district court viewed paragraph 5 as excluding, for all purposes, all exclusions in the base policy, including exclusion (j) on which the insurance company was relying. The district

court found no comparable exclusion in the endorsement and entered judgment on the pleadings in favor of the defendants.

The insurance company contends the district court erred in a number of respects. First, it contends that the endorsement applies only to liability arising from the interstate carriage of persons or property as a common carrier for compensation or hire and that the flight involved was not such an operation. Therefore, it argues paragraph 5 deleting the base policy exclusions is inapplicable and the district court should have applied exclusion (j) of the base policy. Further, the insurance company contends the case was not ripe for entry of judgment on the pleadings as some of the defendants had not answered and that the district court erred in converting a motion to dismiss to a motion for judgment on the pleadings. Finally, the insurance company contends the district court erred in refusing to permit it to amend its petition after entry of judgment, in order to claim under exclusion (k) contained in the endorsement.

We shall first consider whether the district court properly concluded that paragraph 5 of the air taxi endorsement deleted the exclusions in the base policy for purposes herein. One would assume that the relationship between an air taxi endorsement and the base insurance policy to which it is attached would have been discussed in reported cases. No such case has been cited to us nor has our research disclosed any. We must, therefore, plow our own furrow.

A brief summary of the air taxi insurance requirements is appropriate. No effort will be made to plumb the complexities of federal regulations relative to air transportation. It is sufficient to state that in 1967 the Civil Aeronautics Board (CAB) became concerned that some type of mandatory liability insurance was necessary to protect the public from losses through negligence in Board-regulated air taxi operations. Such a requirement was proposed by the CAB that year and ultimately Board-regulated air taxi operators were required to have a CAB form 262 standard endorsement attached to their insurance policies. See 32 Fed. Reg. 17,598 (1967), 33 Fed. Reg. 18,231 (1968), and 35 Fed. Reg. 5,348 (1970), all codified at 14 C.F.R. § 298.1 *et seq.* (1986). Numerous amendments have occurred. The CAB has been abolished, but the CAB regulations remain viable under the

Department of Transportation (49 U.S.C. § 1556 [Supp. III, 1985]). Federally regulated air taxi operators are still required to have a CAB form 262 endorsement on the aviation policies and the endorsement on the policy before us is in compliance therewith. See 14 C.F.R. § 298.41(a) (1986).

We turn now to certain crucial definitions.

Air taxi operator means an air carrier coming within the classification of air taxi operators established by 14 C.F.R. § 298.3 (1986). (14 C.F.R. § 298.2[b] [1986].)

14 C.F.R. § 298.3 sets forth the classification:

"(a) There is hereby established a classification of air carriers, designated as 'air taxi operators,' which directly engage in the air transportation of persons or property or mail or in any combination of such transportation and which:

"(1) Except as provided in § 298.5, do not directly or indirectly utilize large aircraft in air transportation;

"(2) Except as provided in § 298.5, do not hold a certificate of public convenience and necessity or economic authority issued by the Board other than that provided by this part;

"(3) Have registered with the Board in accordance with Subpart C of this part;

"(4) Have and maintain in effect liability insurance coverage in compliance with the requirements set forth in Subpart E of this part and have and maintain a current certificate of insurance evidencing such coverage on file with the Board."

Air transportation means interstate, overseas, or foreign air transportation, or the transportation of mail by aircraft. 49 U.S.C. app. § 1301(10) (1982) and 14 C.F.R. § 298.2(c) (1986).

" 'Interstate air transportation', 'overseas air transportation', and 'foreign air transportation,' respectively, mean the carriage by aircraft of persons or property as a common carrier for compensation or hire or the carriage of mail by aircraft, in commerce between, respectively—

(a) a place in any State of the United States, or the District of Columbia, and a place in any other State of the United States, or the District of Columbia; or between places in the same State of the United States through the airspace over any place outside thereof; or between places in the same Territory or possession of the United States, or the District of Columbia;

(b) a place in any State of the United States, or the District of Columbia, and any place in a Territory or possession of the United States; or between a place in a Territory or possession of the United States, and a place in any other Territory or possession of the United States; and

(c) a place in the United States and any place outside thereof;
whether such commerce moves wholly by aircraft or partly by aircraft and partly by other forms of transportation." 49 U.S.C. app. § 1301(24) (1982)

49 U.S.C. 1301 *et seq.* (1982) is the Federal Aviation Act of 1958.

With these definitions in mind, let us look at the policy herein.

"The policy to which this endorsement is attached is hereby amended to assure compliance by the Named Insured, *an air taxi operator, providing services in air transportation,* with the provisions of Part 298 of the Economic Regulations of the former Civil Aeronautics Board, now the Office of Aviation Operation of the Department of Transportation.

"1. In consideration of the premium stated in the policy to which this endorsement is attached, the Insurer hereby agrees to pay, within the limits of liability for coverages specified in the policy, all sums which the Named Insured shall become legally obligated to pay as damages for bodily injury to or death of persons or for loss of or damage to property of others, *resulting from the Named Insured's negligent operation, maintenance, or use of aircraft in 'air transportation,' as that term is defined in the Federal Aviation Act of 1958.* The liability of the Insurer is not contingent upon the solvency or freedom from bankruptcy of the Named Insured." (Emphasis supplied.)

Excluded from coverage under the endorsement is:

"k. *Any loss arising from operations other than the carriage by aircraft of persons or property as a common carrier for compensation or hire or the carriage of mail by aircraft in interstate, overseas, or foreign air transportation.*" (Emphasis supplied.)

The result seems inescapable. The endorsement only applies to liability resulting from the operation, maintenance, or use of aircraft in air transportation. That is, for purposes herein, the carrying of persons or property for compensation or hire as a common carrier by aircraft in interstate air transportation. If these conditions do not exist, the endorsement is inapplicable and the base policy with its exclusions applies.

Certain facts are absent which are essential to determining whether the air taxi endorsement applies. In their briefs and pleadings, the parties refer to the flight originating in Olathe, Kansas; or Kansas City; or the Kansas City area. The flight ended tragically near Wichita, Kansas. It would appear that it was a wholly intrastate flight, but this is not established as the Kansas City reference could encompass Missouri. Additionally, we have no facts relative to whether this was a "carriage of persons or property as a common carrier for compensation or hire."

We conclude the judgment of the district court must be reversed and the matter remanded. Upon remand, the district court

should determine whether the flight in question meets the criteria necessary for the endorsement to apply. If the endorsement is found not to apply, then the applicability of exclusion (j) in the base policy must be determined. A number of disputed factual questions are involved in this determination. If the air taxi endorsement is held to apply, then the insurance company should be afforded the opportunity to amend its pleadings to determine coverage under the endorsement.

By virtue of this result, we need not reach the issues raised relative to alleged error in granting judgment on the pleadings prior to all answers being filed or in refusing the insurance company the opportunity to amend its petition after entry of judgment herein.

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.